**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**MCALLEN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CASE NO.    7:19-CV-403 |
| | § | |
| WE BUILD THE WALL, INC., | § | |
| FISHER INDUSTRIES, FISHER SAND | § | |
| AND GRAVEL CO., AND NEUHAUS & | § | |
| SONS, LLC., | § | |
| | § | |
| *Defendants.* | § | |

---

**PLAINTIFF'S EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER**
**AND PRELIMINARY INJUNCTION**

---

TO THE HONORABLE JUDGE OF THIS COURT:

The United States of America, pursuant to Article 24 of the 1944 Treaty between the

United States and Mexico (*Utilization of Water of the Colorado and Tijuana Rivers and of the*

*Rio Grande*, US -Mex, Feb. 3, 1944, T.S. 944.) and Rule 65 of the Federal Rules of Civil

Procedure, moves the Court for entry of a Temporary Restraining Order or Preliminary

Injunction enjoining Defendants We Build the Wall, Inc., Fisher Industries, Fisher Sand and

Gravel Co., and Neuhaus & Sons, LLC., and all persons acting on their behalf, from constructing

a bollard structure, wall or similar structure along the banks of the Rio Grande River and/or

otherwise altering the banks of the Rio Grande in furtherance of said construction prior to

obtaining USIBWC authorization, pending entry by the Court of a final judgment in this action.

This motion is based on the following grounds:

1. Contemporaneously with the filing of this motion, the United States filed a

Complaint alleging that Defendants are in the process of constructing a bollard structure, wall or similar structure on the banks of the Rio Grande River prior to obtaining USIBWC authorization.

2.  Unless enjoined by this Court, Defendants may significantly and irreparably alter the character of the banks of the Rio Grande River before this Court can enter a final judgment. Defendants have publicly proclaimed their intent to build a bollard structure, wall or similar structure on the banks of the Rio Grande River.

3.  There is a substantial likelihood that Plaintiff will establish that Defendants' actions in the construction of a bollard structure, wall or similar structure along the bank and in the floodplain of the Rio Grande River without hydraulic studies completed by WBTW and Fisher Industries and subsequent analysis by the USIBWC for deflection and obstruction of water may cause a violation of the 1970 Treaty between the United States and Mexico. (*Treaty to Resolve Pending Boundary Differences and Maintain the Rio Grande and Colorado River as the International Boundary*, U.S. - Mex., Art. IV, Nov. 23, 1970, T.I.A.S. 7313).

4.  There is a substantial likelihood that Plaintiff will establish that Defendants' actions in the construction of a bollard structure, wall or similar structure along the bank and in the floodplain of the Rio Grande River that causes deflection or obstruction of water could trigger the obligation under the 1970 Treaty for the United States to remove or modify such structure (id.), including as authorized by 22 U.S.C. § 277d-34.

5.  There is a substantial likelihood that Plaintiff will establish that Defendants' actions in the removal of vegetation and grading of the banks of the Rio Grande River which

is the property of the USIBWC may cause a shift of the Rio Grande river channel and, therefore, a shift of the international boundary line which runs in the center of the riverbed, may cause a violation of the 1970 Treaty, (*Id.* at II, Art. IV) and is contrary to President's authority under Article II of the Constitution, including the power to conduct the foreign relations of the United States.

6. There is a substantial likelihood that Plaintiff will establish that Defendants' actions in the construction of a bollard structure, wall or similar structure along the bank and in the floodplain of the Rio Grande River without USIBWC permission impedes the President's authority under Article II of the Constitution, the USIBWC's authority under the 1970 Treaty, and the Commissioner's and Secretary of State's authority by statute, including 22 U.S.C.A. § 277d-37, to determine the appropriate location of the international border and to make decisions that are final with respect to it.

7. A Temporary Restraining Order is necessary to preserve the status quo, to prevent the irreparable injury to the public that would result from the Defendants constructing a bollard structure, wall or similar structure on the banks of the Rio Grande River prior to obtaining USIBWC authorization, and to allow the Court to render effective relief if the Plaintiff prevails at trial. Plaintiff would have no adequate remedy at law, and this Court's ability to fashion effective relief would be significantly impaired, if Defendants proceed to construct a bollard structure, wall or similar structure on the banks of the Rio Grande River that is found, after trial, to be unlawful.

8. Any harm to Defendants from enjoining their efforts in constructing a bollard structure, wall or similar structure on the banks of the Rio Grande River would be outweighed by the importance of the preservation of the above-referenced treaty.

9. Granting the requested preliminary relief will serve the public interest.

10. Pursuant to Federal Rule of Civil Procedure 65(c), neither the United States nor any officer or agency of the United States is required to post a bond as a prerequisite to the issuance of an injunction.

## BACKGROUND

In the 1930's, the International Boundary and Water Commission, United States and Mexico, United States Section ("USIBWC") constructed the Lower Rio Grande Flood Control Project ("LRGFCP") (initial authorization in Title II of the National Industrial Recovery Act of June 13, 1933, 48 Stat. 195, Public Works Administration funds; further work Act of August 19, 1935, 49 Stat. 660, codified at 22 U.S.C. § 277a, b, c, and d.) The purpose of the project is to provide flood protection for communities along the Rio Grande River from Peñitas, Texas, to the Gulf of Mexico. The Project includes, in part, river levees and floodways adjacent and parallel to the mainstem of the Rio Grande River in Hidalgo County, Texas. The LRGFCP was improved between 1958 and 1961, and again in 1970.

In 1961, the State of Texas deeded to the USIBWC the bed and banks of the Rio Grande River in Hidalgo County.

The United States and Mexico entered into a treaty in 1970 which requires, in part, that the United States prohibit any works in the United States that will, in the judgment of the Commission, cause deflection or obstruction of the normal flow of the Rio Grande River or its flood flows. (*Treaty to Resolve Pending Boundary Differences and Maintain the Rio Grande and Colorado River as the International Boundary*, U.S.- Mex., Art. IV, Nov. 23, 1970, T.I.A.S. 7313.) Further, the United States agreed that the international boundary between the United States and Mexico in the limitrophe sections of the Rio Grande shall run along the middle of the channel occupied by

normal river flows and that this boundary determines sovereignty over the lands on either side of it.  (*Id.* at Art. II. A.)   To stabilize the river channel and preserve the location of the international boundary the United States and Mexico agreed to various obligations and other treaty provisions in order to reduce the shifting of the channels of the Rio Grande, in their limitrophe sections and to protect the Rio Grande against erosion.  (*Id.* at Art. IV.)

To implement the United States' 1970 Treaty obligations, the USIBWC requires proponents of projects in the US floodplain to submit hydraulic modeling for their project to the USIBWC. The USIBWC analyzes the hydraulic model and confers with its Mexican counterpart about the analysis. If there is no deflection or obstruction, the USIBWC issues a letter of no objection to the project proponent. If there is a deflection or obstruction, the USIBWC typically requests that the proponent modify its project.

Under Article 24 of the 1944 Treaty, the USIBWC "shall have, to the extent necessary to give effect to the provisions of this Treaty, jurisdiction over the works constructed exclusively in the territory of its country whenever such works shall be connected with or shall directly affect the execution of the provisions of this Treaty."   Article 24 also provides that the USIBWC Commissioner may invoke the jurisdiction of the courts or other appropriate agencies of the United States to aid in the execution and enforcement of the powers and duties the Commission is entrusted and empowered to implement under this and other treaties. (*Utilization of Waters of the Colorado and Tijuana Rivers and of the Rio Grande*, US -Mex, Feb. 3, 1944, T.S. 944.)

Specifically, the United States of America requests a temporary restraining order and a corresponding preliminary injunction after notice enjoining Defendants, and Defendant's officers, agents, servants, employees, and attorneys, and all persons in active concern or participation with them, from:

(1) constructing a bollard structure, wall or similar structure along the bank and within the floodplain of the Rio Grande River on land described as an 807.73 gross acre tract of land out of the WEST ADDITION TO SHARYLAND SUBDIVISION, Lots 9-1, 9-2, and Parts of Lots 9-3, 9-4 and Parts of Lots 10-1, 10-2, and 10-3 and Part of Porcion 53 and 54, Hidalgo County, Texas, as per map or plat thereof recorded in Volume 1, Page 56, Map Records, Hidalgo County, Texas as described in the Special Warranty Deed filed as Document No. 2752394, Official Records of Hidalgo County, Texas (hereinafter described in its entirety as the "Neuhaus Property")[1] until such time as WBTW and Fisher Industries comply with the requirements of the USIBWC pursuant to the 1970 Treaty between the United States and Mexico. (*Treaty to Resolve Pending Boundary Differences and Maintain the Rio Grande and Colorado River as the International Boundary*, US – Mex, Nov. 23, 1970, TIAS 7313.);

(2) constructing a bollard structure, wall or similar structure along the bank and within the floodplain of the Rio Grande River on the Neuhaus Property until such time as USIBWC fulfills its analysis and conference requirements pursuant to the 1970 Treaty between the United States and Mexico. (*Treaty to Resolve Pending Boundary Differences and Maintain the Rio Grande and Colorado River as the International Boundary*, US – Mex, Nov. 23, 1970, TIAS 7313.); and

(3) further work impacting the bank of the Rio Grande on the Neuhaus Property until such time as USIBWC reviews the proposed changes to the embankment and issues a permit allowing such modification.

---

[1] For the full metes and bounds description of the Neuhaus Property, see the Special Warranty Deed attached as Exhibit 1.

## FACTS

An organization called We Build the Wall ("WBTW") has contracted with Fisher Industries, a subsidiary of Fisher Sand and Gravel Co., to construct a bollard structure, wall or similar structure in the floodplain along the Rio Grande River in an area near RGV03 by Bentsen State and Anzalduas Park, south of Mission, TX.

WBTW claims to have acquired a legal interest in the land along the bank and within the floodplain of the Rio Grande River from Neuhaus & Sons, LLC ("Neuhaus") in order to construct a bollard structure. *See* Exhibit 1 for the metes and bounds description of the Neuhaus Property from which WBTW allegedly acquired an interest.

On or about the evening of November 13, 2019, Fisher Industries submitted to USIBWC two documents with regard to the hydraulic impact of their proposed bollard structure, wall or similar structure. The documents submitted contained very little substance and failed to show the extent of any hydraulic testing that may have been conducted by WBTW or Fisher Industries. This documentation provided scant detail about the planned work on the bank of the Rio Grande on the Neuhaus Property. *See* Declaration of Padinare Unnikrishna attached as Exhibit 2.

On or about November 15, 2019, the USIBWC emailed Fisher Industries and WBTW through its general counsel, Kris Kobach, and requested that they: 1) Submit a completed hydraulic analysis and packet of additional materials for analysis by the USIBWC pursuant to the 1970 treaty; 2) cease construction of the bollard structure until the USIBWC could analyze the model, confer with Mexico, and issue a letter regarding whether there is a deflection or obstruction as a result of the construction; and 3) stop utilizing the USIBWC levee for vehicular traffic.

On or about November 15, 2019, WBTW and Fisher Industries began clear-cutting a swath on the Neuhaus Property beginning at the bank of the Rio Grande River and clearing inland

approximately 120 feet wide. To date, WBTW has cleared over three miles of riverbank on the Neuhaus Property and continues to prepare the immediate area of the riverbank for trenching and installation of a bollard structure, wall or similar structure.

On or about November 19, 2019, the USIBWC sent to Fisher Industries the model required for projects in the U.S. floodplain.  *See* Declaration of Dr. Apurba Borah attached as Exhibit 3. An engineer with Fisher Industries replied stating that he had received the email and would use the model.  *Id.*

On or about November 19, 2019, USIBWC sent to Fisher Industries and WBTW two emails, one of which gave IBWC's contact information and the other which asked for more detail about their project's impact on the banks of the Rio Grande.  *See* Declaration of John Claudio attached as Exhibit 4.

On or about November 20, 2019, WBTW announced during an interview with a local news network that it would not do any construction activity until the USBIWC completed its hydraulic analysis. On or about November 20, 2019, WBTW posted a tweet on its twitter feed that reflected that Fisher Industries and WBTW were altering the character of the bank of the Rio Grande.

[Remainder of Page Intentionally Left Blank]



https://twitter.com/briankolfage/status/1197504335388794880?s=12;
https://twitter.com/briankolfage/status/1197526566512812034?s=12

The vegetation removal and grading of the banks of the Rio Grande River on the Neuhaus

Property by Fisher Industries and WBTW was not permitted by USIBWC, the owner of the banks

of the Rio Grande River.

On or about November 21, 2019, Fisher Industries confirmed that: it would not commence

construction of a bollard fence, wall or similar structure on the Neuhaus Property until USIBWC

conducted its hydraulic analysis; that it was removing vegetation from the riverbank and grading

it; and that its work on the riverbank would be included in its hydraulic analysis for its construction

project.  *See* Declaration of John Claudio attached as Exhibit 4.

On or about December 3, 2019, WBTW posted the message and video below to their

website requesting donations to continue building their private wall.





As of December 5, 2019 at 9:00a.m. on information and belief, WBTW has continued to clear the immediate area of the riverbank and conduct other work on the Neuhaus Property and has failed to produce the requested documents and studies requested by the USIBWC for analysis regarding compliance or noncompliance with the terms of the 1970 treaty.  In addition, trenching

has occurred and steel rebar structures have been place in the ground.   Due to this latest development, a temporary restraining order is necessary.

## ARGUMENT

The decision to grant a temporary restraining order and preliminary injunction lies within the discretion of the district court, which should be exercised when the movant demonstrates: (a) a substantial likelihood of success on the merits; (b) a substantial threat of immediate and irreparable harm, for which it has no adequate remedy at law; (c) that greater injury will result from denying the injunctive relief than from its being granted; and (d) that the injunctive relief will not disserve the public interest. *See, e.g., Winter v. Natural Res. Def. Council, Inc.,* 555 U.S. 7, 11 (2008) (equitable factors for injunctive relief); *Lakedreams v. Taylor,* 932 F.2d 1103, 1107 (5th Cir. 1991); *Daniels Health Scis., LLC v. Vascular Health Scis., LLC*, 710 F.3d 579, 582 (5th Cir. 2013); *Adams EMS, Inc. v. Azar*, No. H-18-1443, 2018 WL 3377787, at *3 (S.D. Tex. July 11, 2018).

The issuance of relief in the form of the requested temporary restraining order is both permissible and necessary in this matter. *See* FED. R. CIV. P. 65(b)(1).  Defendants have not obtained the necessary authorization to construct a bollard structure on the banks of the Rio Grande River.  There is a substantial threat of immediate and irreparable harm if Defendants are permitted to engage in their construction prior to the USIBWC analyzing whether their activities would create unacceptable deflection or obstruction of the floodplain. Furthermore, the severity of the injury the United States would likely face is much greater in comparison with the minor inconvenience of a short-term delay on Defendants' border activities. Finally, the temporary cessation of Defendants' construction activities along the border will ensure compliance with the treaties between the United States and Mexico pending the Court's resolution of this matter.

## PRAYER

In light of the foregoing, the United States respectfully requests that the Court grant the above-requested temporary restraining order and thereafter set a hearing on the United States' request for a preliminary injunction.

Respectfully submitted,

**RYAN K. PATRICK**
United States Attorney
Southern District of Texas
**DANIEL DAVID HU**
Chief, Civil Division

BY:      *s/ E. Paxton Warner*
**E. PAXTON WARNER**
Assistant United States Attorney
Southern District of Texas No. 555957
Texas Bar No. 24003139
1701 W. Bus. Highway 83, Suite 600
McAllen, TX 78501
Telephone: (956) 618-8010
Facsimile: (956) 618-8016
E-mail: Paxton.Warner@usdoj.gov

Attorney in Charge for the United States
of America

And

**JOHN A. SMITH, III**
Assistant United States Attorney
Southern District of Texas No. 8638
Texas Bar No. 18627450
One Shoreline Plaza
800 North Shoreline Blvd., Suite 500
Corpus Christi, Texas 78401
Telephone: (361) 888-3111
Facsimile: (361) 888-3234
E-mail: john.a.smith@usdoj.gov

Attorney for the United States of America