UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>    Plaintiff,<br><br>v.<br><br>FISHER INDUSTRIES, FISHER SAND<br>AND GRAVEL CO., AND NEUHAUS &<br>SONS, LLC,<br>    Defendants. | §<br>§<br>§<br>§   CASE NO. 7:19-CV-403<br>§<br>§<br>§<br>§<br>§ |

**FISHER DEFENDANTS' RESPONSE TO
PLAINTIFF'S MOTION FOR LEAVE TO FILE AN AMENDED COMPLAINT**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW FISHER INDUSTRIES, FISHER SAND AND GRAVEL CO., and TGR CONSTRUCTION, INC., Defendants is the above-entitled and numbered cause (hereinafter referred to as the "Fisher Defendants"), file this Response to the UNITED STATES' Motion for Leave to file Second Amended Complaint for Injunctive Relief, and in support thereof would respectfully show the Court as follows:

**Background**

1.      This matter was initiated on December 5, 2019 by the United States of America at the request of the United States International Boundary and Water Commission (hereinafter referred to collectively as the "IBWC") seeking to a TRO and a Preliminary Injunction related to a border fence project being erected by the Fisher Defendants. (Docket No. 5.) On December 16, 2019, the IBWC filed its First Amended Complaint adding TRG Construction, Inc. as a Defendant in this action. (Docket No. 17).

2.      On December 5, 2019, the Court granted the IBWC's temporary restraining order. (Docket No. 7.) On January 9, 2020, following an evidentiary hearing, the Court permitted the

-1-

Fisher Defendants to proceed with the construction of the border fence project. The specific minute entry from the oral hearing of January 9, 2020 on the IBWC's request for a preliminary injunction relating to the three (3) miles of border fence on the Newhouse Property includes:

> After testimony and discussion, the Court found Plaintiffs' evidence in 19cv411 to be highly speculative and not proof of substantial success on the merits. Furthermore, the Court found there is legally insufficient evidence presented by the Government of any affect in violation of the treaty.

As a result, the TRO expired, and the Fisher Defendants were no longer prohibited from proceeding with the border wall project on the Newhouse property.

3. Thereafter, the Fisher Defendants continued the construction efforts, and according to the IBWC, on or about February 2020, the Fisher Defendants completed construction of the approximately three (3) mile long bollard fence project along or near the banks of the Rio Grande River. *See* Plaintiff's Second Amended Complaint for Permanent Injunctive Relief, p.7, ¶ 28 (Docket No. 62-1).

4. On May 7, 2021, the IBWC filed its "Opposed Motion for Leave of Court to file Second Amended Complaint for Injunctive Relief." The Motion was filed on the very last day available under the Court's current Scheduling Order for amending pleadings.

5. As described below, the Fisher Defendants do not consent to the filing of Plaintiff's Second Amended Complaint for Permanent Injunctive Relief (Paragraph 54) because the new claims for relief, asserted for the first time in Plaintiff's Second Amended Complaint, will unduly delay this matter and are unduly prejudicial to the Fisher Defendants. The new claims for relief are unrelated to the border fence project made the basis of this dispute, would require the Fisher Defendants to expand significant additional resources to conduct discovery and prepare for trial, potentially require the addition of new party, and the new claims for relief significantly delays the resolution of the existing disputes between the parties to this matter.

6. More specifically, the new relief sought by the IBWC in the Second Amended Complaint for Permanent Injunctive Relief includes, without limitation, "a permanent injunction… enjoining Fisher Defendants from future construction along the banks of the Rio Grande, or in its floodplain" … *See* Second Amended Complaint, p. 15, ¶ 54 (Docket No. 62-1). The Rio Grande River forms a 1,255-mile border with Mexico. *See* www.IBWC.gov/ CRP/riogrande.htm. As such, the new relief sought by the IBWC potentially impacts future projects within 100's of 1,000's (if not millions) of acres of private property in Texas. Further, as discussed at the injunction hearing, the IBWC is not consistent in its enforcement, and will require Defendants to assert due process defenses and force unnecessary discovery on those issues. At the heart of this issue is the fence project and compliance of that project with the treaty, not other possible as yet unknown projects. The proposed pleading is not a pleading updating factual recitations, but rather, seeks to add new claims for relief which will unduly and unnecessarily complicate the issues which have been in front of this Court since December of 2019.

## Argument

7. A court is within its discretion to deny leave to amend a complaint, after expiration of the as "a matter of course" periods under FRCP 15, for a number of reasons, including without limitation, undue delay, bad faith, dilatory motive, or undue prejudice. *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *Engstrom v. First Nat'l Bank*, 47 F.3d 1459, 1464 (5th Cir. 1995). In this matter, the new claims for relief, seeking a permanent injunction against the Fisher Defendants relating to any and all future projects occurring anywhere with the Rio Grande Floodplain will unduly delay this matter and is unduly prejudicial to the Fisher Defendants.

8. More specifically, Plaintiff's Second Amended Complaint for Permanent Injunctive Relief does not identify any future projects, currently planned or conceivably to be

executed in the future, by the Fisher Defendants which the IBMC contends would occur within the Rio Grande Floodplain. Because there are no future projects identified by the IBWC, there are no factual allegations that these unidentified future projects could or would in any manner implicate any interest of the IBWC. As a result, the parties will be required to vastly expand discovery in this matter, including written discovery and oral depositions. Meanwhile, the vagaries of the allegations by the IBWC in the Second Amended Complaint for Permanent Injunctive Relief virtually compel the Fisher Defendants into additional Rule 12 motion practice, including Motions to Dismiss and/or for a More Definite Statement.

9. Defendant has no other projects at this time in the Rio Grande Valley, but a wholesale injunction is a vast overreach of administrative authority and factually will unduly complicate this current case. Defendants have repeatedly informed the IBWC that it will be advised of any future projects within their jurisdiction. In the event a future project by Fisher, somewhere along the 1,255 border area and its associated floodplain, the discoverable data and information relating to any such prospective project would conceivably include surveys, topography, and elevations of the new project location; the construction plans for the new project; construction schedules; hydrology studies and modeling by each party; and expert opinion related to the alleged impact of the project on any interest relating to the IBWC. The new claims will impose a considerable cost of prosecution, and more importantly, a considerable cost of defense upon the Fisher Defendants. Meanwhile, none of the additional data, information, documents, deposition transcripts, studies, models, or expert opinion would be in any manner related to the specific three (3) mile long border fence previously erected by the Fisher Defendants at issue in this case. Quite simply, the new claims for relief would lead the parties far afield of the core dispute made the basis of this litigation.

10.     With respect to the existing border wall, the IBWC has alleged that the project is occurring on or immediately adjacent to the IBWC's property.  According to the IBWC, the United States owns the banks of the Rio Grande River.  *See* Plaintiff's First Amended Complaint, p. 3, ¶9. (Docket No. 17).  The new claims for relief implicate a far broader area – the Rio Grande Floodplain.   The IBWC cannot allege any ownership of the Rio Grande Floodplain beyond the banks of the Rio Grande river.  Therefore, any such projects would potentially occur on the private property of third parties not currently before the Court.   If the legitimate goal of the IBWC in seeking this new relief is to prevent the erection of non-conforming structures with the Rio Grande Floodplain, to achieve the goal with respect to any hypothetical future projects considered by the Fisher Defendants, the IBWC would be required to add the land owners for those projects to this litigation.   The effect would be to multiply the number of parties before the court.  In order to afford those land owners, as new parties to this lawsuit a reasonable opportunity to defend the claims, final resolution of the existing claims relating to the three (3) mile existing border fence would be significantly delayed as the newly added land owners engaged in motion practice, factual discovery, expert witness retention/reporting, and expert witness discovery.

11.     Similarly, the IBWC's interest in any construction projects on private property within the ever-changing Rio Grande River floodplain is far less direct or immediate than the existing three (3) mile project before the court.  According to the IBWC, the exclusive jurisdiction of the IBWC over the larger floodplain area of the Rio Grande River is limited to "works constructed exclusively in the territory (of the US) … whenever such works shall be connected with or shall directly affect the execution of the provisions" the 1944 Treaty with Mexico.  *See* Plaintiff's First Amended Complaint, p. 4, ¶12. (Docket No. 17).  The IBWC would have to show that these alleged future projects, potentially to be executed miles from the IBWC property (the bed and banks of the Rio Grande River), are connected with or will directly affect the execution of some

provisions of the 1944 Treaty. The IBWC has not made any such allegations supporting it's purported "jurisdiction" over the unidentified future projects in Plaintiff's Second Amended Complaint. As pled, the IBWC claims for relief would enjoin the Fisher Defendants from constructing a simple loafing shed, building a five (5) strand barbed wire cattle fence, or regrading a private farm road on private property anywhere within the expansive Rio Grande River floodplain along the 1,255-mile border.

12. Further, the alleged impacts of such unidentified future projects are, at best, speculative at this time. When challenging the existing three (3) mile border fence project, the nature, scope, and extent of which was well known to IBWC, the IBWC was unable to come forward with legally sufficient evidence of any affect in violation of the 1944 Treaty. The unidentified future projects made the basis of the new claims for relief do not and would not arise out of the same transaction or series of transactions as the existing three (3) mile border fence project. As such, the practical and legal burden imposed upon the IBWC to show that the new projects would be within its exclusive jurisdiction, would allegedly create an affect in violation of the 1944 Treaty, and that the IBWC is entitled to a permanent injunction on those prospective projects would be even greater because the projects are not in existence. *See Dresser-Rand Co. v. Virtual Automation Inc.*, 361 F.3d 831, 847 (5th Cir. 2004) ((*citing Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531, 546 n. 12 (1987) (recognizing that the standard for a permanent injunction is essentially the same as for a preliminary injunction except that the plaintiff must show actual success on the merits rather than a mere likelihood of success on the merits)).

13. Additionally, the IBWC will not be prejudiced by the Court's refusal to entertain in this case any requests for equitable, legal, or injunctive relief for projects other than the discrete and well defined three (3) mile long border fence currently made the basis of this dispute. This

Court and others remain open to the IBWC in the unlikely event that at some future date the Fisher Defendants get engaged with some new project in the Rio Grande River floodplain. Thus, the IBWC will not lack access to an appropriate forum, and because future projects are prospective, there are no limitation issues.

14. Finally, there is no allegations or claims that the Fisher Defendants habitually or routinely require court intervention to assure compliance with their respective obligations under the law. The current action, along with the related claims of the North American Butterfly Association in cause number 19-cv-411, relate to a single project, and temporary injunctive relief was denied to the IBWC in this matter. Whether that project complies or fails to comply with the existing regulations and/or treaty requirements is the factual dispute in this action. But, the existence of the factual dispute between the IBWC and the Fisher Defendants is no evidence the Fisher Defendants will seek to violate regulatory requirements in the future. This factor mitigates in favor of reserving any future disputes related to other or different projects for a subsequent legal action, when and if necessary.

15. In summary, the new claim for relief relating to a permanent injunction for any and all projects along the Rio Grande River or its floodplain has the potential to exponentially increase the discovery burdens of the Fisher Defendants, re-initiate motion practice relating to the specifics of the new claims for relief, add new, but not yet identified parties to this lawsuit, and ultimately, delay resolution of the core dispute that has been the sole basis of this lawsuit for the preceding nineteen (19) months. As a result, the new claims for relief with unduly delay resolution and are unduly prejudicial to the Fisher Defendants.

If the Court grants The Plaintiff's motion to Amend, in whole or part, then the Fisher Defendants request an opportunity to file responsive pleadings.

## CONCLUSION

The new claims for relief, seeking a permanent injunction against the Fisher Defendants relating to any and all future projects occurring anywhere with the Rio Grande Floodplain will unduly delay this matter and is unduly prejudicial to the Fisher Defendants. As a result, the Court should deny UNITED STATES' Motion for Leave to file Second Amended Complaint for Injunctive Relief, and permit UNITED STATES' to amended its complaint only with respect to specific claims relating to the existing three (3) mile border fence project which has previously been constructed by the Fisher Defendants. In the event leave is permitted, in whole or part, Defendants request permission to file responsive pleadings.

WHEREFORE, Premises Considered, Defendants Fisher Industries, Fisher Sand and Gravel Co., and TGR Construction, Inc. pray that Plaintiff's Motion for Leave to file Second Amended Complaint for Injunctive Relief be denied.

        */s/ Mark J. Courtois*
MARK J. COURTOIS
Texas Bar No. 04897650
Email: mjcourtois@ffllp.com
Direct: 713-620-7226
FUNDERBURK FUNDERBURK COURTOIS, LLP
2777 Allen Parkway, Suite 1000
Houston, Texas 77019
(713) 526-1801
(713) 526 2708 – FAX

Attorneys for FISHER INDUSTRIES, FISHER SAND & GRAVEL CO, and TGR CONSTRUCTION, INC.

## CERTIFICATE OF SERVICE

    I, MARK J. COURTOIS, hereby certify that a true and correct copy of the foregoing instrument has been forwarded to all known Filing Users AND has been accomplished by Notice of Electronic Filing pursuant to Local Administrative Procedure 9(a) on this, the 26th day of May 2021.

                                                        */s/ Mark J. Courtois*
                                                        MARK J. COURTOIS