### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF TEXAS
### MCALLEN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § § | |
| *Plaintiff,* | § § | |
| v. | § § | CASE NO.   7:19-cv-403 |
| FISHER INDUSTRIES, FISHER SAND AND GRAVEL CO., TGR CONSTRUTION, INC. AND NEUHAUS & SONS, LLC, | § § § § § | |
| *Defendants.* | § | |

### SECOND AMENDED COMPLAINT FOR
### PERMANENT INJUNCTIVE RELIEF

This is a second amendment of a civil action pursuant to Rule 15 F.R.C.P. brought by the United States of America at the request of the United States International Boundary and Water Commission, seeking permanent injunctive relief, costs and damages against Defendants Fisher Industries, Fisher Sand and Gravel Co., TGR Construction, Inc. and for the construction of a bollard wall along the bank of the Rio Grande River.

### PARTIES

1.      Defendant Fisher Industries is a subsidiary of Fisher Sand and Gravel Co. and can be served through its agent, National Registered Agents, Inc., 1999 Bryan St., Ste. 900, Dallas, TX 75201-3136.

2.      Defendant Fisher Sand and Gravel Co. is a North Dakota corporation and can be served through its agent, National Registered Agents, Inc., 1999 Bryan St., Ste. 900, Dallas, TX 75201-3136.

EXHIBIT
1

3.      Defendant TGR Construction, Inc. is an Arizona corporation and can be served through its agent, National Registered Agents, Inc., 1999 Bryan St., Ste. 900, Dallas, TX 75201-3136.

4.      Plaintiff is the United States of America.

## JURISDICTION AND VENUE

5.      The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 as this case arises under the Constitution, statutes, and Articles 23 and 24 of the 1944 Treaty between the United States and Mexico (*Utilization of Waters of the Colorado and Tijuana Rivers and of the Rio Grande*, US – Mex, Feb. 3, 1944, TS 944.).

6.      Venue is proper in the Southern District of Texas, McAllen Division under 28 U.S.C. § 1391(b)(2) as a substantial part of the events giving rise to these claims have occurred along the bank of the Rio Grande River in Hidalgo County, Texas.  Additionally, the property on which the construction the United States seeks to enjoin is located in Hidalgo County, Texas.

## BACKGROUND

7.      The mission of the International Boundary and Water Commission (IBWC or Commission) is to provide binational solutions to issues that arise during the application of U.S.-Mexico treaties regarding, among other things, boundary delineation and demarcation, boundary issues, water quality and flood control in the border region as directed by Congress. The 1944 *Treaty Between the United States of America and Mexico Respecting Utilization of the Waters of the Colorado and Tijuana Rivers and of the Rio Grande* ("1944 Treaty"), Mex.-U.S., Feb. 3, 1944, 59 Stat. 1219, T.S. No. 994, established the key organizational components of IBWC and its two sections—the U.S. section ("USIBWC") and the Comisión Internacional de Límites y Aguas ("CILA" or the "Mexican Section"). These sections act on behalf of their respective government

in the "exercise of the rights and obligations," and the "settlement of all disputes" arising under

the 1944 Treaty. 1944 Treaty, art. 2.

8.      The IBWC was designated as a public international organization pursuant to the

International Organizations Immunities Act, 22 U.S.C. 288 *et seq.*, by Executive Order 12467. *See*

49 Fed. Reg. 8,229 (March 2, 1984). This designation does not extend to the USIBWC when it is

acting on matters "within its *exclusive* control, supervision or jurisdiction, or within the *sole*

discretion of the United States Commissioner, *pursuant to* international agreements in force with

the United Mexican States, statute or other authority." *Id*. (emphasis added). Thus, the USIBWC

acts as both a federal government agency *and* as a component of a public international

organization.

9.      In the 1930's, the International Boundary and Water Commission, United States

and Mexico, United States Section ("USIBWC") constructed the Lower Rio Grande Flood Control

Project ("LRGFCP") (initial authorization in Title II of the National Industrial Recovery Act of

June 13, 1933, 48 Stat. 195, Public Works Administration funds; further work Act of August 19,

1935, 49 Stat. 660, codified at 22 U.S.C. § 277a, b, c, and d).  The purpose of the project is to

provide flood protection for communities along the Rio Grande River from Peñitas, Texas, to the

Gulf of Mexico. The Project includes, in part, river levees and floodways adjacent and parallel to

the mainstem of the Rio Grande River in Hidalgo County, Texas.  The LRGFCP was improved

between 1958 and 1961, and again in 1970.

10.      In 1961, the State of Texas deeded to the USIBWC the bed and banks of the Rio

Grande River in Hidalgo County.

11.      The United States and Mexico entered into a treaty in 1970 which requires, in

part, that the United States prohibit any works in the United States that will, in the judgment of

the Commission, cause deflection or obstruction of the normal flow of the Rio Grande River or its flood flows.  (*Treaty to Resolve Pending Boundary Differences and Maintain the Rio Grande and Colorado River as the International Boundary*, U.S.- Mex., Art. IV, Nov. 23, 1970, T.I.A.S. 7313, hereinafter "1970 Treaty".)  Further, the United States agreed that the international boundary between the United States and Mexico in the limitrophe sections of the Rio Grande shall run along the middle of the channel occupied by normal river flows and that this boundary determines sovereignty over the lands on either side of it.  (*Id.* at Art. II. A.)   This treaty also establishes that when the Rio Grande River moves laterally, the international boundary generally moves with it, specifying that the boundary "shall continue to follow the middle of the channel." (*See id*. Art. III.)  To stabilize the river channel and preserve the location of the international boundary the United States and Mexico agreed to various obligations and other treaty provisions in order to reduce the shifting of the channels of the Rio Grande, in their limitrophe sections and to protect the Rio Grande against erosion.  (*Id*. at Art. IV.)

12.     To implement the United States' 1970 Treaty obligations, the USIBWC requires proponents of projects in the US floodplain to submit hydraulic modeling for their project to the USIBWC. The USIBWC analyzes the hydraulic model and confers with its Mexican counterpart about the analysis.  If there is no deflection or obstruction, the USIBWC issues a letter of no objection to the project proponent. If there is a deflection or obstruction, the USIBWC typically requests that the proponent modify its project.  Implementation of U.S. obligations under the 1970 Treaty necessarily requires communication and coordination with the government of Mexico.

13.     Under Article 24 of the 1944 Treaty, the USIBWC "shall have, to the extent necessary to give effect to the provisions of this Treaty, jurisdiction over the works constructed

exclusively in the territory of its country whenever such works shall be connected with or shall directly affect the execution of the provisions of this Treaty." Article 24 also provides that the USIBWC Commissioner may invoke the jurisdiction of the courts or other appropriate agencies of the United States to aid in the execution and enforcement of the powers and duties the Commission is entrusted and empowered to implement under this and other treaties. (*Utilization of Waters of the Colorado and Tijuana Rivers and of the Rio Grande*, US -Mex, Feb. 3, 1944, T.S. 944.)

## **FACTS**

14.      Fisher Industries, Fisher Sand and Gravel Co. and/or TGR Construction, Inc. (hereinafter collectively referred to as the "Fisher Defendants or Fisher"), contracted with Neuhaus and Sons, LLC (hereinafter "Neuhaus") for land on which to construct a bollard structure, wall or similar structure in the floodplain along the Rio Grande River in an area near RGV03 by Bentsen State and Anzalduas Park, south of Mission, TX .

15.      The Fisher Defendants acquired a legal interest in the land along the bank and within the floodplain of the Rio Grande River from Neuhaus to construct a bollard structure, wall or similar structure.  The land from which the Fisher Defendants acquired an interest is described as an 807.73 gross acre tract of land out of the WEST ADDITION TO SHARYLAND SUBDIVISION, Lots 9-1, 9-2, and Parts of Lots 9-3, 9-4 and Parts of Lots 10-1, 10-2, and 10-3 and Part of Porcion 53 and 54, Hidalgo County, Texas, as per map or plat thereof recorded in Volume 1, Page 56, Map Records, Hidalgo County, Texas as described in the Special Warranty Deed filed as Document No. 2752394, Official Records of Hidalgo County, Texas (hereinafter described in its entirety as the "Neuhaus Property").

16.     On or about the evening of November 13, 2019, the Fisher Defendants submitted to USIBWC two documents with regard to the hydraulic impact of their proposed bollard structure. The documents submitted contained very little substance and failed to show the extent of any hydraulic testing that may have been conducted by the Fisher Defendants. This documentation provided scant detail about the planned work on the bank of the Rio Grande.

17.     On or about November 15, 2019, the USIBWC emailed the Fisher Defendants and requested that they:  1) Submit a completed hydraulic analysis and packet of additional materials for analysis by the USIBWC pursuant to the 1970 treaty; 2) cease construction of the bollard structure until the USIBWC could analyze the model, confer with Mexico, and issue a letter as to whether there is a deflection or obstruction as a result of the construction; and 3) stop utilizing a USIBWC levee for vehicular traffic.

18.     On or about November 15, 2019, the Fisher Defendants began grading and clearcutting a swath beginning at the bank of the Rio Grande River and clearing inland approximately 120 feet wide.

19.     On or about November 19, 2019, the USIBWC sent to the Fisher Defendants the model required for projects in the U.S. floodplain.

20.      On or about November 19, 2019, USIBWC sent the Fisher Defendants an email asking for more detail about their project's impact on the banks of the Rio Grande.

21.     On or about November 20, 2019, the Fisher Defendants announced during an interview with a local news network that it would not do any construction activity until the USBIWC completed its hydraulic analysis.

22.     The vegetation removal and grading of the banks of the Rio Grande River by the Fisher Defendants was not permitted by USIBWC, the owner of the banks of the Rio Grande River.

23.     On or about November 21, 2019, the Fisher Defendants confirmed:  that it would not commence construction of a bollard fence until USIBWC conducted its hydraulic analysis; that it was removing vegetation from the riverbank and grading it; and that its work on the riverbank would be included in its hydraulic analysis for its construction project.

25.     Despite the confirmation stated in paragraph 22, on or about December 4, 2019, the Fisher Defendants continued to work on the Neuhaus Property trenching and moving metal rebar pieces into location along the trench.

26.     On December 5, 2019, the United States filed its Complaint for Injunctive Relief (Doc. No. 1) and  Motion for a Temporary Restraining Order and Preliminary Injunction (Doc. No. 5) ("TRO") to stop the Fisher Defendants from continuing their construction activity related to the bollard structure until the USIBWC conducted its analysis of the bollard structure and implemented its consultation process with Mexico.

27.  The TRO was granted on December 5, 2019 (Doc. No. 7); however, it was lifted on January 9, 2020 after a hearing before the Court and the Fisher Defendants could proceed with construction of the bollard structure.

28.  On or about February 2020, the Fisher Defendants completed construction of the approximately 3-mile long bollard fence project on private land along the bank of the Rio Grande River.  The fence project involves the construction of the bollard fence structure, as well as a modification to the riverbank from a compacted dirt shelf to a sloped "beach" shore that extends to the bollard fence structure.  The Fisher Defendants' modifications to the riverbank include significant modifications on USIBWC property, i.e., the riverbank and the riverbed.

29. As result of the bollard fence project and the modification to a "beached" bank, the bank of the Rio Grande River has shifted, causing potential losses and/or gains in territory to the United States and Mexico.

30. In implementing the 1970 Treaty, including Article IV which obligates the United States to prohibit the construction of works in U.S. territory along the river which, in the judgment of the IBWC, "may cause deflection or obstruction of the normal flow of the river or of its flood flows," USIBWC's standard for all project proponents within the floodplain is that deflection due to a structure must be less than +5% in appropriate hydraulic calculations. This standard ensures that no significant physical changes to the Rio Grande River and floodway are caused by deflection and that there are no problematic deflections of floodwater toward the United States or Mexico, and that actions of the United States government or private actors within the United States do not thereby have any undesired effect of shifting the location of the international boundary and effectively ceding territory from the United States to Mexico or vice versa.

31. USIBWC's standard for all project proponents in locations with flood control levees, as in this case, is that appropriate hydraulic calculations must show that any proposed structure shall not cause any increase in water surface elevation in order to preserve the minimum levee freeboard of three (3) feet for Federal Emergency Management Agency (FEMA) levee accreditation purposes. The levee freeboard is the vertical distance from the top of the levee to the water surface elevation below it from the design flood. The threshold values for water surface elevation are to ensure that obstructions do not increase flood risks for communities along the river.

32. The Fisher Defendants failed to comply with USIBWC requirements to submit a model which would assess and demonstrate that there were no adverse impacts, i.e., that

appropriate calculations of anticipated water surface elevation increases and deflection values were within the threshold limits required by USIBWC in light of U.S. obligations under the 1970 Treaty.

33.      Despite repeated input from USIBWC staff, the Fisher Defendants repeatedly submitted inadequate and non-compliant\hydraulic models.   USIBWC therefore lacked the information needed to evaluate the potential effects of the Fisher Defendants' project and to share with the Mexican Section of the IBWC for its consideration pursuant to the 1970 Treaty.  As a result, it was necessary for USIBWC to develop a hydraulic model of Fisher Defendants' bollard fence. USIBWC developed a 1D/2D model from the inadequate model that Fisher provided to USIBWC.

34.      In or around May, June, and July of 2020, seasonal rains fell in the region where the bollard fence is located, and stormwater runoff from the land-side of the fence to the newly-created beach riverbank caused substantial erosion  and voids along and under the bollard fence structure as well as the unvegetated "beached" bank of the Rio Grande. The substantial erosion along the riverside of the bollard fence structure also threatens the structural integrity of the bollard fence structure.

35.      On July 6, 2020, USIBWC notified the Fisher Defendants that USIBWC's hydraulic modeling identified a significant adverse hydraulic impact (deflection was +10.32% toward the United States) from the constructed bollard fence structure and listed USIBWC's concerns about current and ongoing erosion exposing the foundation of the bollard fence structure, erosion degrading the United States riverbank and potentially shifting the boundary line under the 1970 Treaty, and the lack of vegetation management adversely impacting the flood flows around the bollard fence structure.

36.     The bollard fence structure and related road system has caused erosion of the riverbank where the   Fisher Defendants modified the USIBWC-owned bank from a vertical compacted earth shelf with thick native vegetation to a sloped "beach" like shore/bank with looser sand and no vegetation to stabilize the exposed soil., As a result of the modification to the bank, erosion of the bank from the Rio Grande River toward the bollard fence structure has thus far resulted  in a loss of land from the United States and a shift in the U.S. bank and potentially, the international boundary.

37.     Subsequent to the completion of the bollard fence structure, the Fisher Defendants submitted a series of additional models for review, the latest of which is under review by the United States as part of the ongoing litigation. Further, the Fisher Defendants have failed to submit adequate Operation and Maintenance reports remediating the erosion caused by the Fisher Defendants modification of the riverbank.

38.     The Fisher Defendants undertook its construction and modification activities without a supportive decision of the Commission or a letter of no objection from the USIBWC regarding whether its structure would obstruct flood and regular flows of the Rio Grande.  The Fisher Defendants did not provide and has failed to provide sufficient information for the USIBWC or Commission to reach such decisions.

39.     The Fisher Defendants have failed to effectively mitigate losses to the riverbank, resulting in continued shifting of the riverbank.

40.     The Fisher Defendants have failed to mitigate the erosion caused by the bollard fence structure runoff towards the Rio Grande River over the modified "beach" riverbank.

41.     The Fisher Defendants have failed to submit to USIBWC an Operation and Maintenance Plan that adequately addresses how the Fisher Defendants will manage the

vegetation, such that it will not cause an additional obstruction; how it will mitigate  debris

blockage; how it will operate the bollard fence structure during a flood event; how it will maintain

the structural integrity of the bollard fence structure; how it will mitigate and remedy erosion

effects caused by the fence and the "beach" slope; how it will prevent future erosion of the

riverbank, and other damages which will occur to the banks and structure, which will result from

rain events and erosion, and could result in damage to U.S. infrastructure downstream.

42.     Through the above described actions of the Fisher Defendants, the United States

has suffered irreparable injury, including but not limited with respect to interference with

USIBWC's implementation of the 1970 Treaty, USIBWC's consultation and coordination with

the Government of Mexico, USIBWC's property rights in the Rio Grande river banks, and the

United States' interests with respect to the location of the international boundary between the

United States and Mexico.  This injury is ongoing, the balance of hardships cuts in favor of the

United States, and the public interests of the United States, including as reflected in its treaties and

statutes, would be served by the relief requested in this case

## CAUSES OF ACTION

### A.        Impeding Treaty Implementation

43.     The construction of a bollard structure, wall, or fence by the Fisher Defendants

along the bank and in the floodplain of the Rio Grande River on the Neuhaus Property may or has

constituted "the construction of works in [U.S.] territory which, in the judgment of the

Commission, may cause deflection or obstruction of the normal flow of the river or of its flood

flows," which the United States is obligated to prohibit pursuant to the 1970 Treaty between the

United States and Mexico.  (*Treaty to Resolve Pending Boundary Differences and Maintain the*

*Rio Grande and Colorado River as the International Boundary*, U.S.-Mex, Art. IV, Nov. 23, 1970, T.I.A.S. 7313).

44.     The construction of a bollard structure, wall or fence by the Fisher Defendants along the bank and in the floodplain of the Rio Grande River on the Neuhaus Property without adequate and USIBWC compliant hydraulic studies completed by the Fisher Defendants and without allowing subsequent analysis by the USIBWC for deflection and obstruction of water impedes and has harmed implementation of USIBWC's obligations under the 1970 Treaty between the United States and Mexico.  (*Id.*)

45.     The construction of a bollard structure, wall or fence by the Fisher Defendants along the bank and in the floodplain of the Rio Grande River on the Neuhaus Property without allowing USIBWC or the Mexican Section of IBWC to effectively consider and consult with each other regarding the potential effects of the construction with respect to deflection, obstruction, erosion, and the location of the international boundary impedes and has harmed USIBWC's implementation of its obligations under the 1970 Treaty between the United States and Mexico. (*Id.*)

46.     The construction of a bollard structure, wall or fence by the Fisher Defendants along the bank and in the floodplain of the Rio Grande River on the Neuhaus Property that causes deflection or obstruction of water could or has likely triggered the obligation under the 1970 Treaty for the United States to remove or modify such structure (id.), including as authorized by 22 U.S.C. § 277d-34, and has harmed USIBWC by undermining its ability to implement and serve its functions required by the 1970 Treaty.

47.     The vegetation removal and grading of the banks of the Rio Grande River along the Neuhaus Property which is the property of the USIBWC, by the Fisher Defendants, and the erosion

caused by the works and actions of the Fisher Defendants, may or has caused a shift of the Rio

Grande banks and river channel and, is an unauthorized private action that has likely shifted the

location of the international boundary line which runs in the center of the channel, pursuant to the

1970 Treaty, (*Id.* at II, Art. IV) and has impeded implementation of the 1970 Treaty, including in

light of the federal government's Constitutional authority with respect to foreign relations and

determining the appropriate location of the international border between the United States and

Mexico.

### B.  Violations of Statutes and Related Authorities

48.      The construction of a bollard structure, wall or similar structure by the Fisher

Defendants along the bank and in the floodplain of the Rio Grande River on the Neuhaus Property

without USIBWC permission impedes the authority of the President under Article II of the

Constitution as well as the authority of the USIBWC under the 1944 and 1970 Treaties and various

statutes with respect to construction impacting the U.S. border and related interests, including: 22

U.S.C. § 277b (authorizing the President, among other things, "to construct any project or works

designed to facilitate compliance with the provisions of treaties between the United States and

Mexico"); 22 U.S.C. § 277d-35 (authorizing the USIBWC Commissioner to construct all works

provided for in the 1970 Treaty, and to turn over the operation and maintenance of such works to

other public entities); and 22 U.S.C. § 2774-34 (authorizing the Secretary of State, though the

Commissioner, "to remove, modify, or repair the damages caused to Mexico by works constructed

in the United States" that are determined to have an adverse effect on Mexico).

49.      The construction of a bollard structure, wall or similar structure by the Fisher

Defendants along the bank and in the floodplain of the Rio Grande River on the Neuhaus Property

without USIBWC permission impedes the President's authority under Article II of the

Constitution, the USIBWC's authority under the 1970 Treaty, and the Commissioner's and Secretary of State's authority by statute, including 22 U.S.C. § 277d-37, to determine the appropriate location of the international border and to make decisions that are final with respect to it.

### C.   Common Law Tort: Trespass and Interference with/or Loss/Destruction of Property

50.   The construction of the bollard fence on the Neuhaus Property, and the Fisher Defendants' removal of vegetation and change to the character of the riverbank resulted in and continues to result in significant erosion of the banks of the Rio Grande, which risks losing or changing U. S. territory and USIBWC property by shifting the center of the Rio Grande River and thereby, pursuant to the 1970 Treaty, shifting the international boundary between Mexico and the United States.

51.   The construction of the bollard fence on the Neuhaus Property, and the Plaintiff's removal of vegetation changed the character of the riverbank which resulted in an alteration and significant erosion of the banks of the Rio Grande. USIBWC is the owner of the banks of the Rio Grande and its property has been altered, destroyed and/or lost, without its permission and the function of the vertical, compacted earth bank to stabilize the banks has been adversely impacted.

52.   The Fisher Defendants' actions have exposed the bollard structure and underlying support to past and future degradations as a result of storm events, degradations which as they continue to worsen, could result in the collapse of the structure, potentially further exacerbating the harms noted above as well as harming United States and Mexico structures downstream, including the Anzalduas International Dam.

## RELIEF REQUESTED

53.     The United States seeks equitable relief through a permanent injunction pursuant to the authorities cited above and Rule 65 of the Federal Rules of Civil Procedure requiring  the Fisher Defendants to modify the existing bollard structure along the bank and within the floodplain of the Rio Grande River on the Neuhaus Property to comply with the requirements and procedures of the USIBWC with respect to its implementation of the 1970 Treaty between the United States and Mexico.  (*Treaty to Resolve Pending Boundary Differences and Maintain the Rio Grande and Colorado River as the International Boundary*, US – Mex, Nov. 23, 1970, TIAS 7313.)

54.     The United States seeks equitable relief through a permanent injunction pursuant to the authorities cited above and Rule 65 of the Federal Rules of Civil Procedure, enjoining Fisher Defendants from future construction along the banks of the Rio Grande, or in its floodplain, without first complying with USIBWC's requirements and procedures with respect to its implementation of the 1970 Treaty, and obtaining a no-objection letter or favorable decision of the Commission and/or United States Section of the Commission.

55.     The United States seeks equitable relief through a permanent injunction pursuant to the authorities cited above and Rule 65 of the Federal Rules of Civil Procedure requiring the Fisher Defendants to restore the banks of the Rio Grande River; develop an operation and maintenance plan in perpetuity for the bollard structure and banks to prevent obstruction of the fence, and erosion and degradation of the project; to post a bond in the amount of $3 million, in the event the structure becomes unstable or threatens to collapse or Fisher fails to perform maintenance on or concerning the bollard structure, so that it can be removed by USIBWC; and to provide a permanent right of entry to the USIBWC for purposes of inspecting the project or addressing the lack of maintenance or imminent failure of the fence.

56.     In the alternative, the United States seeks an order of the Court requiring Fisher Defendants remove the entire structure, forthwith and restoring the area in and around the structure, including the banks of the Rio Grande River to the satisfaction of the USIBWC.

57.     The United States requests the recovery of any allowable costs associated with the prosecution of this action, and all other costs permitted by law. 28. U.S.C. §2412(a).

WHEREFORE, the United States requests that the Court enter findings that Defendants Fisher Industries, Fisher Sand and Gravel Co., and TGR Construction, Inc. have failed to comply with requirements pursuant to, and have acted inconsistent with, the President's authority under Article II of the Constitution, USIBWC requirements and procedures pursuant to its implementation of the 1970 Treaty between the United States and Mexico  (*Treaty to Resolve Pending Boundary Differences and Maintain the Rio Grande and Colorado River as the International Boundary*, US – Mex, Nov. 23, 1970, TIAS 7313), and relevant statutes and common law tort claims, cited above.  The United States further requests that the Court enter judgment on behalf of the USIBWC and grant an order of Permanent Injunction in favor of the United States, and other relief as may be lawful and proper.

Respectfully submitted,

**JENNIFER B. LOWERY**
Acting United States Attorney
Southern District of Texas
**DANIEL DAVID HU**
Chief, Civil Division

By:    *s/ E. Paxton Warner*
    **E. PAXTON WARNER**
Assistant United States Attorney
Southern District of Texas No. 555957
Texas Bar No. 24003139
1701 W. Bus. Highway 83, Suite 600
McAllen, TX 78501
Telephone:  (956) 618-8010
Facsimile:  (956) 618-8016
E-mail: Paxton.Warner@usdoj.gov

Attorney in Charge for the United States of
America

And

JOHN A. SMITH, III
Assistant United States Attorney
Southern District of Texas No. 8638
Texas Bar No. 18627450
One Shoreline Plaza
800 North Shoreline Blvd., Suite 500
Corpus Christi, Texas 78401
Telephone: (361) 888-3111
Facsimile: (361) 888-3234
E-mail: john.a.smith@usdoj.gov

Attorney for the United States of America

## <u>CERTIFICATE OF SERVICE</u>

I, E. Paxton Warner, do hereby certify that on _____, a copy of the foregoing

Second Amended Complaint for Injunctive Relief was served via email to the following:

Mark Courtois
mjcourtois@fflp.com
Attorney for the Fisher Defendants

Lance Kirby
lakirby@jgkl.com
Attorney for Neuhaus & Sons, LLC

By:   *s/ E. Paxton Warner*
**E. PAXTON WARNER**
Assistant United States Attorney